**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3241
_____

ZHEN SHI CHEN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-376-124)
Immigration Judge:  Honorable Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 6, 2011

Before:  AMBRO, GREENAWAY, JR., and GREENBERG, Circuit Judges

(Opinion filed: May 10, 2011 )
_____

OPINION
_____

PER CURIAM

    Zhen Shi Chen petitions for review of the Board of Immigration Appeals' ("BIA")

final order of removal.  For the reasons that follow, we will deny the petition.

I.

Chen is a citizen of China who entered the United States in 2007 without being admitted or paroled. The Government charged him as removable on that basis, which Chen concedes. See 8 U.S.C. § 1182(a)(6)(A)(i). He applied for asylum, statutory withholding of removal, and withholding of removal under the Convention Against Torture on the ground that he suffered mistreatment in the past and fears mistreatment in the future on account of his resistance to China's coercive family planning policies. See 8 U.S.C. § 1101(a)(42).

Chen testified before the Immigration Judge ("IJ") that his wife, who remains in China, was forcibly sterilized in 1995 after giving birth to twins. He testified that he struggled with the six or seven officials who came to take her for that purpose and that they beat him and opened a cut above his eye that required stitches. He also testified that officials required his wife to report for two examinations shortly after her sterilization and that, when he complained, they threatened to arrest him and break his leg. He further testified that he stopped complaining after that and remained in China without incident until 2007, when he could afford to pay for his smuggling into the United States.

The IJ found Chen's testimony not credible because of certain omissions in his initial asylum application that she characterized as inconsistencies between his testimony and affidavits. The IJ also concluded that, even if Chen were credible, he had not shown eligibility for relief. In that regard, she concluded both that the mistreatment he described did not rise to the level of past persecution and that he had not shown a well-founded fear of future persecution in light of the twelve years he remained in China without further

2

incident following the events he described.[1]

Chen appealed to the BIA, which adopted and affirmed the IJ's decision. In doing so, the BIA both summarized the IJ's decision and noted that neither Chen's testimony nor letters from his wife described any further threats since he left China in 2007. It also explained that the 2007 Profile of Asylum Claims undermines Chen's claims. Chen petitions for review.[2]

## II.

On review, Chen challenges both the IJ's adverse credibility determination and the BIA's substantive rulings. We need not address the adverse credibility determination because the substantive rulings are independently dispositive and Chen's challenges to those rulings lack merit.

Those challenges are two. First, Chen argues that the mistreatment he suffered constituted past persecution, which would give rise to a rebuttable presumption that he

---

[1] The IJ stated at one point that Chen testified that officials threatened to break his leg in "May 2005." (IJ Dec. at 7.) Chen did not so testify (A.R. 186), and the May 2005 date was contained in a question he was asked (A.R. 196). In any event, the IJ went on to conclude from Chen's testimony that nothing has happened to him or his wife since May 1995 and that he remained in China without incident for twelve years after that. (IJ Dec. at 8, 22.) Chen does not argue otherwise.

[2] We review the decisions of the IJ and the BIA together because the BIA both adopted and summarized the decision of the IJ and added some of its own reasoning. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). In doing so, we review the IJ's factual findings for substantial evidence and may not disturb them unless "any reasonable adjudicator would be compelled to conclude to the contrary." Guang Lin-Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (quoting 8 U.S.C. § 1252 (b)(4)(B)). We review legal conclusions de novo. See Sandie, 562 F.3d at 251.

has a well-founded fear of persecution in the future. See Kibinda v. Att'y Gen., 477 F.3d 113, 119 (3d Cir. 2007). We have held on numerous occasions that mistreatment of the kind Chen claims to have suffered, though certainly regrettable, is not sufficiently extreme to rise to the level of persecution. See, e.g., id. at 117, 119-20 (five-day detention and injury that required stitches); Cai Luan Chen v. Ashcroft, 381 F.3d 221, 223, 234-35 (3d Cir. 2004) (beating by birth control officials combined with wife's forced abortion); see also Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) ("While this Court has not yet drawn a precise line concerning where a simple beating ends and persecution begins, our cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution.") (collecting cases).

Chen does not acknowledge this line of authority. Instead, he argues that the BIA failed to consider his beating and the subsequent threat to break his leg in the aggregate. See Fei Mei Cheng v. Att'y Gen., 623 F.3d 175, 195 (3d Cir. 2010). But the IJ (whose decision we review along with the BIA's) expressly considered them in the aggregate (IJ Dec. at 20-21), and the BIA clearly was aware of both events (BIA Dec. at 1-2). Chen also argues that the BIA erred in failing to consider his beating and the subsequent threat in light of his wife's forced sterilization. The IJ and BIA, however, properly limited their discussion to the harm inflicted on Chen himself. See Guang Lin-Zheng, 557 F.3d at 157 (concluding that wife's forced abortion did not state a basis for husband's relief but that "his own harassment" might if his testimony were credible); Cai Luan Chen, 381 F.3d at 223, 234-35 (rejecting argument that "the beatings [petitioner] suffered at the hands of

4

government officials combine with the forced abortion and the marriage license denial in such a way as to constitute past persecution").

Second, Chen argues that he faces persecution and torture in the future because his resistance to his wife's sterilization and examinations in 1995 means that the Chinese government will treat him as a political opponent. The IJ and BIA rejected this claim primarily on the grounds that Chen was not mistreated or threatened in China for some twelve years after the incidents in question before departing and does not claim that any threat has arisen since then. This reasoning was a sufficient basis to deny Chen's claims. Cf. Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of persecution is diminished."). Chen cites no evidence compelling the conclusion that he faces persecution or torture if returned to China, and in fact cites no evidence on this issue at all.[3]

Accordingly, we will deny the petition for review.

---

[3] The sole support Chen offers for this argument is a statement by a Court of Appeals that China treats "those who resist forced sterilization . . . as political and ideological criminals and as enemies of the state" and has "inflicted harsh punishment on refuges who are returned[.]" Ke Zhen Zhao v. U.S. Dept. of Justice, 265 F.3d 83, 92 (2d Cir. 2001). The court made that statement by way of describing the legislative record that led to the amendment of the term "refugee" in 1996 to include those subjected to coercive family planning policies. See id. It was not the basis for the court's decision even in that case, and certainly does not compel the conclusion that Chen faces persecution or torture if returned to China today.